JOHN W. MANSON et als.

*vs.*

FRANCIS C. PEAKS.

SAME *vs.* SAMUEL NORTON.

Piscataquis.    Opinion February 15, 1908.

*Judgment.    Chose in Action.    Assignment.    Collateral Attack.    Quitclaim Deed.
Covenant of Non-Claim.    Implied Covenant.    After-Acquired
Title.    Grantee without Notice.*

1.  A judgment is a chose in action and can be assigned in writing by the
    administrator of the deceased judgment creditor, so that the assignee can
    maintain an action thereon in his own name.

2.  After an otherwise valid judgment in favor of such assignee in an action
    upon the original judgment, the validity or efficacy of the assignment can-
    not be questioned by the judgment debtor, nor by any one claiming under
    him.

3.  Where one, not then having a title to real estate, gives a mere quitclaim
    deed thereof with only a covenant of non-claim, a title afterward acquired
    by him does not pass to the grantee in such prior deed.

4.  A recital in such deed at the close of the description of the land as
    follows, "and being a part of the land purchased by me of the town of
    Foxcroft" does not constitute a covenant by the grantor that he then has
    the title to the land.

5.  A grantee, without notice, under a deed given after the title was acquired
    by the grantor, has a better title than the grantee under a quitclaim deed
    without covenant of warranty given before the title was acquired by the
    grantor.

On report.    Judgment for plaintiffs in each case.

Real actions brought by the plaintiffs as trustees in bankruptcy
of the estate of Henry Hudson of Guilford.    The first named action
was to recover Lot No. 15, Range 11, in the town of Foxcroft,
Piscataquis County, and the second was to recover Lot No. 15,
Range 10, in the same town.    Plea, the general issue in each
action.

Both actions came on for hearing at the September term, 1906, of the Supreme Judicial Court, Piscataquis County, and at the conclusion of the evidence in each action the parties agreed that upon so much of the evidence as was competent and legally admissible, both cases should be reported to the Law Court for decision.

All the material facts are stated in the opinion.

*Hudson & Hudson*, for plaintiffs.
*J. B. & F. C. Peaks*, for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

EMERY, C. J. These are real actions. The plaintiffs' title is from the town of Foxcroft through the town's grantee, Seth Brawn, and through Henry Hudson, a judgment and levying creditor of Brawn. The defendants also claim title under Brawn.

The first question to be considered is whether the judgment *Hudson* v. *Brawn* is valid against collateral attack. In the declaration in the writ, *Hudson* v. *Brawn*, there was set forth the due recovery of a prior judgment (describing it) by one Thompson against Brawn and its want of satisfaction, the decease of Thompson, the assignment in writing of the unsatisfied judgment to Hudson by the duly appointed administrator of the estate of Thompson deceased, and the accruing of an action thereby to Hudson to have and recover of Brawn the amount of the judgment. The writ was duly served upon Brawn, who did not appear, and Hudson recovered judgment upon due default in 1887. The only argument urged that the judgment is void upon its face is that an administrator has no power to assign a judgment. It is settled, however, that a judgment is an assignable chose in action upon which an action can be sustained in the name of an assignee; *Wood* v. *De Coster*, 66 Maine, 542; *Ware* v. *B. & B. R. R. Co.*, 69 Maine, 97. We do not see why a judgment cannot be assigned by an administrator as well as any other chose in action belonging to the estate. It follows that the Hudson judgment is not void upon its face.

It is claimed that the Thompson judgment had become subject to the right of Thompson's widow for an allowance before the assignment of it to Hudson by the administrator, and it is argued that as there was no effectual transfer of the judgment by that assignment, the Hudson judgment was void. That question, however, is not open in these actions. Brawn had his day in which to question the efficacy of the assignment. Neither he nor any one claiming under him can now question it in collateral proceedings. As to the parties to these actions, the question is wholly res inter alios, between the administrator and the widow or the heirs or creditors of Thompson or between Hudson and them.

In the absence of any evidence of collusion or other fraud on the part of Hudson or Brawn in obtaining the judgment *Hudson* v. *Brawn*, it must be held valid until satisfied or reversed, and its effect was to make Hudson a judgment creditor of Brawn with all the rights against Brawn of a judgment creditor. *Sidensparker* v. *Sidensparker*, 52 Maine, 481; *Treat* v. *Maxwell*, 82 Maine, 76.

Hudson, having obtained a valid judgment against Brawn, found upon the records in the registry of deeds a record of a deed of the demanded land from the town of Foxcroft to his judgment debtor Brawn, dated Jan'y 9, 1869, and recorded Jan'y 25, 1873. Not finding upon the records any record of a deed of the land from Brawn after the date of his deed from Foxcroft, Hudson levied his judgment upon the land as the land of Brawn. No defect in the proceedings of levy and sale is shown, and hence Hudson acquired at least a prima facie title to the land which title admittedly has come to these plaintiffs.

The defendants also claim title under Brawn, but only under a deed from him dated Sept. 22, 1868, and recorded Oct. 1, 1868, both some months before he received any deed from Foxcroft and before any legal title had vested in him. The defendants urge, however, that the title which afterward accrued to him under his deed from Foxcroft Jan'y 9, 1869, enured to his grantee under his prior deed of Sept. 22, 1868, so that no title remained in Brawn to be acquired by any one. That deed was a deed of release and quitclaim, in which the only express covenant was that of non-claim,

as follows :   "So that neither I, the said grantor, nor my heirs, nor any other person or persons claiming from or under me or them, or in the name, right or stead of me or them, shall or will by any way or means have, claim or demand any right or title to the aforesaid premises or their appurtenances or to any part or parcel thereof forever."   It is the settled law of this State that such a deed with only that covenant operates to pass the grantor's then existing title only, and does not operate to pass an after acquired title.   See *Bennett* v. *Davis*, 90 Maine, 457 ; where the reasons and the authorities are stated at length.

The defendants claim, however, that there are implied covenants in the deed which do operate to pass the after acquired title.   It appears that the town of Foxcroft at its annual March meeting of 1868 "Voted to authorize the treasurer to deed to Seth Brawn by release deeds Lots 13, 14 and 15 in the 11th Range and Lot No. 15 in the 10th Range for the sum of eighty dollars ;" but, as already stated, no deed was given till Jan'y 9, 1869, and it does not appear that he had paid the eighty dollars till then.   In his deed given Sept. 22, 1868, after the vote of the town but before he received the deed authorized by that vote, Brawn described the land he was quitclaiming as follows :   "Lots numbered fifteen in the 10th range and fifteen in the 11th range of lots in said Foxcroft, and being a part of the land purchased by me of the town of Foxcroft." The defendants urge that these words, in view of the facts above stated, constitute in effect a covenant that he then had and was conveying an actual title and estate in the land described, and a covenant to make that title good.

Even if such a covenant would operate to pass an after acquired title, we do not think it can be reasonably implied.   The words "and being part of the land purchased by me of the town of Foxcroft" are not in their connection words of covenant, but merely words of description or identification.   They no more imply a covenant of title than did similar words in the deed under consideration in *Bennett* v. *Davis*, 90 Maine, 457.

It follows that the record title to the demanded land is in the plaintiffs.   Though Brawn had not occupied the land, it does not

appear that Hudson had any actual notice of any deed from him, nor is any title by adverse possession set up by the defendants, and hence the plaintiffs are entitled to judgment.

*Judgment for plaintiffs in each case.*